IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ARMIDA A. VALENCIA, ERIC WOLFE, and STEVE POSTMA, on behalf of themselves and all others similarly situated, *Plaintiffs/Appellants*,

*v.*

JOHN M. ALLEN, in his official capacity as Treasurer of Maricopa County; MARICOPA COUNTY, an Arizona political subdivision unit of government; SUEANN MELLO, in her official capacity as Treasurer of Mohave County; MOHAVE COUNTY, an Arizona political subdivision unit of government, *Defendants/Appellees*.

No. 1 CA-CV 25-0452

FILED 02-24-2026

Appeal from the Superior Court in Mohave County
No.  S8015CV202401923
The Honorable Steven C. Moss, Judge

**VACATED AND REMANDED**

COUNSEL

Martin Law & Mediation PLLC, Phoenix
By Aaron Thomas Martin
*Counsel for Plaintiff/Appellant* Armida A. Valencia

Hughes & Suhr LLC, Chicago
By Daniel R. Suhr
*Counsel for Plaintiff/Appellant* Eric Wolfe

Spero Law LLC, Charleston
By Christopher Mills
*Counsel for Plaintiff/Appellant* Steve Postma

Tully Bailey LLP, Scottsdale
By Stephen W. Tully
*Counsel for Defendants/Appellees* John M. Allen and Maricopa County

Mohave County Attorney's Office, Kingman
By Matthew J. Smith, Jason Mitchell, William Davis
*Counsel for Defendants/Appellees* SueAnn Mello and Mohave County

---

**OPINION**

Presiding Judge Andrew M. Jacobs delivered the opinion of the Court, in which Judge Brian Y. Furuya and Judge James B. Morse Jr. joined.

---

**J A C O B S**, Judge:

¶1 Plaintiffs Armida Valencia, Eric Wolfe, and Steve Postma (the "Homeowners") appeal the superior court's dismissal of their complaint alleging that tax lien foreclosures on properties they owned were takings and excessive fines that violated the Fifth and Eighth Amendments to the United States Constitution, in light of *Tyler v. Hennepin County*, 598 U.S. 631 (2023). Because the Arizona Tax Court has exclusive subject matter jurisdiction over this case, we vacate all proceedings in it after the filing of the complaint and remand the case to the superior court with a direction to transfer it to the Arizona Tax Court.

**FACTS AND PROCEDURAL HISTORY**

**A. Arizona's Tax Lien Foreclosure Scheme**

¶2 We first outline Arizona's tax lien foreclosure scheme that was in effect until 2024 and resulted in the losses of which the Homeowners complain. (After *Tyler*, our legislature amended that scheme, but those amendments do not affect this appeal.)

¶3 In Arizona, units of local government tax real property each year. Until county treasurers collect the property tax, a lien remains on the taxed property. A.R.S. §§ 42-17153, -18001. If a property owner does not pay, the treasurer may, after notifying the property taxpayer, collect by

2

selling the tax lien on the delinquent property at a public auction to whoever "pays the whole amount of delinquent taxes, interest, penalties and charges due on the property," and "accept[s] the lowest rate of interest on the amount so paid to redeem the property from the sale." A.R.S. §§ 42-18106, -18114.

¶4        If a private purchaser acquires the tax lien at auction, the treasurer issues a certificate of purchase to them. A.R.S. § 42-18118. If no one buys the tax lien, the certificate of purchase is assigned to the State. A.R.S. § 42-18113(A)(1). Either way, the certificate of purchase does not transfer ownership. Rather, the former owner remains in possession with the right to redeem the tax lien for three years after the sale. A.R.S. §§ 42-18151, -18152(A)(1).

¶5        If the real property owner does not redeem and the State holds the certificate of purchase, the property may be auctioned to recover the "taxes, interest, penalties, fees and costs" due, but the former owner can recover "[a]ny balance remaining." A.R.S. § 42-18303(A), (C).

¶6        If, however, the real property owner does not redeem within three years and a private party holds the certificate of purchase, that private party may foreclose the right of redemption by filing a superior court action naming the treasurer as defendant. A.R.S. § 42-18201. If the private foreclosure action satisfies certain requirements, the superior court will enter a foreclosure judgment directing the treasurer to deliver to the foreclosing party a treasurer's deed conveying the property, thus extinguishing the previous owner's interests entirely. A.R.S. § 42-18204(A). After that, the private purchaser may dispose of the property how they wish, including by selling it and keeping any surplus value above the amount paid for the tax lien.

### B.    The Homeowners Allege They Suffered Constitutional Violations Under Arizona's Tax Lien Foreclosure Scheme.

¶7        Until 2023, the Homeowners each owned real property in either Maricopa or Mohave County. The Homeowners allege that after they failed to pay their property taxes, private purchasers bought the tax liens on their properties from the relevant county treasurers. The Homeowners allege that after they failed to redeem their properties, those private purchasers instituted foreclosure actions and received treasurer's deeds from the county treasurers. They allege the private purchasers then sold the properties for more than the Homeowners' delinquent tax debts, thus keeping the surplus value for themselves.

¶8        The same year the Homeowners allege they suffered these losses, the United States Supreme Court decided *Tyler*. In *Tyler*, the Court held a homeowner has a constitutionally protected property interest in the surplus value of their real property after it is taken by the state and sold to satisfy delinquent taxes. 598 U.S. at 641. Believing *Tyler* rendered Arizona's tax lien foreclosure scheme unconstitutional, the Homeowners sued Maricopa and Mohave Counties and their treasurers John Allen and SueAnn Mello (the "Counties") to recover surplus value they had lost.

¶9        The Homeowners filed an eight-count suit in the superior court in Mohave County alleging the Counties sold the tax liens and issued the treasurer's deeds, thus participating in or permitting a taking of the Homeowners' property without just compensation, and imposing excessive fines upon them. They argued the Counties' "pattern, practice, and policy of choosing to exercise their authority to sell tax liens and issue treasurer's deeds" "took property from" the Homeowners "by facilitating the theft of surplus value in connection with property taken to satisfy a tax lien." They alleged the private tax lien purchasers "reap[] a significant windfall by seizing all excess home equity, without" compensating "the previous owner," and the Counties "make more money than they otherwise would by selling liens." The Homeowners' claims are grounded in Arizona Revised Statutes title 42, chapters 17 and 18. *See* A.R.S. § 42-18001 *et seq.*

### C.    The Superior Court Dismisses the Homeowners' Claims, and This Appeal Follows.

¶10        The Counties moved to dismiss the Homeowners' claims of uncompensated takings under the Fifth Amendment and of excessive fines under the Eighth Amendment for failure to state claims upon which relief could be granted. The superior court in Mohave County agreed with the Counties, dismissing the Fifth and Eighth Amendment claims, as well as other related state constitutional and tort claims.

¶11        The Homeowners timely appealed the dismissal of their Fifth and Eighth Amendment claims. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. § 12- 2101(A)(1).

### DISCUSSION

¶12        Courts have a continuing obligation to police their own jurisdiction, even in the absence of any party raising the issue. *Morgan v. Hays*, 102 Ariz. 150, 152-53 (1967). Given the jurisdiction of the Arizona Tax Court over cases that "involve the legality of any tax, impost or assessment," A.R.S. § 12-161(A), and given that neither party had raised the

propriety of the Mohave County Superior Court retaining jurisdiction over this case, we asked the parties to address that question at argument, which they did.

**The Superior Court in Mohave County Erred By Not Assigning This Matter to the Tax Court, Which Has Exclusive Subject Matter Jurisdiction Over It.**

¶13        "The jurisdiction of the superior court is conferred upon it by the state constitution and statutes." *Schoenberger v. Bd. of Adjustment*, 124 Ariz. 528, 530 (1980). Our Legislature gave the Arizona Tax Court, which is the tax department of the superior court in Maricopa County, exclusive jurisdiction over "cases . . . which involve the legality of any tax, impost or assessment." A.R.S. § 12-161(A).

¶14        The Legislature's preference that the tax court hear such cases is strong — it mandates that "if it appears from the pleadings . . . filed with the superior court that an action involves the imposition, assessment or collection of a tax, including all questions of law and fact relating to disputes about taxes, . . . arising under title . . . 42," the "presiding judge of the superior court *shall* assign the action to the tax court." A.R.S. § 12-163(A) (emphasis added). As we next explain, this case fits every one of these criteria for the tax court's jurisdiction.

¶15        *First*, it "appears from the pleadings . . . that [the Homeowners'] action involves the  . . . collection of a tax." A.R.S. § 12-163(A). The Homeowners allege in their complaint that "[t]he County Treasurer, as tax collector, secures payment on delinquent taxes by selling liens and/or foreclosing the right to redeem those liens." They further allege that the Counties "took property from" the Homeowners "by facilitating the theft of surplus value *in connection with property taken to satisfy a tax lien*." (Emphasis added). These allegations show this case involves the collection of a tax.

¶16        *Second*, the Homeowners' action also presents "questions of law . . . relating to disputes about taxes." A.R.S. § 12-163(A). The Homeowners' complaint challenges the constitutionality of Arizona's tax lien foreclosure scheme. And at argument, they agreed that their claim is that "Arizona's tax lien foreclosure scheme is unconstitutional under the Fifth Amendment." Whether Arizona's tax lien foreclosure scheme is illegal under the Fifth Amendment and *Tyler* is a "question of law." *Matthews v. Indus. Comm'n of Ariz.*, 254 Ariz. 157, 160 ¶ 16 (2022). Whether it effects a conversion or an unjust enrichment, as the Homeowners also

contend, likewise presents questions of law. And these questions of law relate to disputes about taxes, which A.R.S. § 12-163(A) tells us must be litigated in the tax court. For this reason too, the Homeowners' case must be litigated before the tax court.

¶17     *Third*, the Homeowners could not be clearer that their complaint challenges tax collection that "aris[es] under" title 42, chapters 17 and 18. They pleaded that "[f]or decades, Arizona law allowed counties to profit from the collection of unpaid property taxes under Title 42, Chapter 18 of the Arizona Revised Statutes." That too makes this a case for the tax court specifically, A.R.S. § 12-161(A), and not the superior court generally. A.R.S. § 12-163(A).

¶18     There are limited exceptions to the tax court's exclusive jurisdiction, but they don't apply here. Actions "involving the imposition, assessment or collection of a tax, including questions of law or fact relating to a dispute about taxes, arising under title 42, chapters 11 through 16 may be filed in either the tax court or the superior court." A.R.S. § 12-163(B). But this isn't such a case — the Homeowners pleaded a dispute about taxes that arises under title 42, chapters 17 and 18. Additionally, an "action to foreclose the right to redeem [a tax lien] shall be filed in the superior court in the county in which the real property is located and shall name the county treasurer as a party to the action." A.R.S. § 42-18201(A)-(B). But this isn't an action to foreclose anything — it's a constitutional and tort lawsuit challenging how Arizona counties collect unpaid property taxes through our state's tax lien foreclosure scheme.

¶19     For these reasons, the presiding judge of the county in which this matter was filed was required to transfer it to the tax court. A.R.S. §§ 12-163(A), -165(B). Otherwise, parties could select other fora in which to litigate such disputes, which the legislature has prohibited.

**CONCLUSION**

**¶20** We vacate the judgment and all proceedings in this case after the filing of the complaint. We remand this case to the superior court and direct it to transfer this matter to the Arizona Tax Court for further proceedings. Because no party prevailed in this appeal, we award no one costs under ARCAP 21.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR